IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CALEB CHAMBERLAIN and KRISTOPHER TRINDER,<br><br>On behalf of Plaintiffs and Class,<br><br>vs.<br><br>CROWN ASSET MANAGEMENT,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO REASSIGN CASE, GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS<br><br>Case No. 1:21-CV-00146-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on two motions: Defendant Crown Asset Management, LLC's ("Defendant") motion to reassign this action to Judge Howard C. Nielson, Jr.; and Defendant's motion to dismiss, pursuant to Rules Fed. R. Civ. P. 12(b)(1) and (6), the claims filed by Plaintiffs Caleb Chamberlain and Kristopher Trinder ("Plaintiffs"). The court held a hearing on the motions on June 1, 2022. At the hearing, Plaintiffs were represented by Daniel M. Baczynski. Defendant was represented by Mark A. Nickel. The court has carefully considered the memoranda submitted by the parties, the arguments made by counsel at the hearing, and the law and facts relating to this matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Defendant removed this case, premised on allegations of unlicensed debt collection, to federal court. Defendant now brings two motions – a motion to reassign the action to Judge Nielson, and a motion to dismiss Plaintiffs' claims.

1

In this case, Plaintiffs allege that Defendant was not registered as a debt collector in accordance with the Utah Collection Agency Act (the "UCAA"), specifically Utah Code § 12-1-1. Plaintiffs claim that Defendant violated both the Federal Debt Protection Act (the "FDCPA") and the Utah Consumer Sales Practice Act (the "UCSPA") by engaging in deceptive and unconscionable acts when it (1) filed debt collection lawsuits in Utah without a license, (2) represented in state court that it could collect the debt, and (3) subsequently failed to clarify to consumers and courts that it is criminally barred from debt collection. Plaintiffs allege that because Defendant was not registered in accordance with the UCAA, Defendant lacked authority to file debt collection lawsuits in Utah against Plaintiffs.

Valerga Lawyers filed, on Defendant's behalf, an action in state court against Plaintiff Trinder on December 14, 2020. The firm also, on Defendant's behalf, filed an action against Plaintiff Chamberlain on April 14, 2021. One or more of the attorneys at Valerga Lawyers are licensed to practice law in Utah and are registered as debt collectors under the UCAA.

In these underlying actions, both Plaintiffs chose not to respond to the complaints filed against them. Thereafter, default judgments on those actions were entered against Plaintiff Trinder on March 23, 2021 and against Plaintiff Chamberlain on May 12, 2021. Plaintiff Trinder's time to appeal the judgment entered against him expired on April 22, 2021. Plaintiff Chamberlain's time to appeal the judgment entered against him expired on June 11, 2021.

The claims now sought by Plaintiffs are very similar to those that were brought by Connie Holmes and Christine Trease in their complaint filed in *Holmes v. Crown Asset Mgmt., LLC*, 2021 WL 3473050 (D. Utah 2021). Counsel for Plaintiffs in this action are the same as the counsel that represented Holmes and Trease in *Holmes*. After the parties fully briefed *Holmes* and participated in an oral argument, Judge Nielson dismissed the FDCPA claims with prejudice.

After Judge Nielson's ruling in *Holmes*, Plaintiffs' counsel filed – on behalf of Plaintiff Chamberlain and Plaintiff Trinder – an FDCPA claim in this action. Judge Nielson rejected arguments in *Holmes* that the same counsel now makes again in the present case.

Valerga Lawyers, on Defendant's behalf, never pleaded in the underlying actions that Defendant was registered as a debt collector in accordance with the UCAA. Plaintiffs submit that the failure to do so was deceptive and the acts of the law firm are Defendant's acts. As further deceptive acts, Plaintiffs have also asserted that Defendant misrepresented in its suit aspects of the following statements that "the account has now been assigned to Plaintiff"; that "there is now due and owing to [Defendant] the amount"; and that "said balance is correct and duly owing to [Defendant] as the current assignee".

Defendant asserts that it is not a debt collection company, does not conduct a collection agency in Utah, does not conduct a collection bureau in Utah, and does not conduct a collection office in Utah. Defendant does not advertise for or solicit in Utah the right to collect or receive payment for another of any Utah account. Defendant maintains no offices in Utah and has no employees who reside in Utah. Defendant purchases debts, and if the debtor resides in Utah, then Defendant engages a UCAA-registered and Utah Bar licensed attorney to file a lawsuit on Defendant's behalf to collect on the debt owned by Defendant. Because Defendant does buy and collect third-party debts – and then outsource its collection efforts on those debts to law firms – Plaintiffs argue that the UCAA applies to Defendant. All activities concerning the subject debts were performed by Brody Valerga of Valerga Lawyers, who Defendant understands to be a Utah licensed attorney and registered in accordance with the UCAA.

## **DEFENDANT'S MOTION TO REASSIGN ACTION**

Defendant has filed a motion to reassign this action to the Central Division of the District of Utah – specifically to Judge Nielson. Defendant's reasoning for this request is that the Complaint in the current action is essentially the same as the complaint in *Holmes*, which Judge Nielson dismissed with prejudice. In *Holmes*, Judge Nielson ruled that, even if it were technically illegal for an unregistered debt collector to have filed debt collection lawsuits, it would be unconstitutional to punish the defendant for engaging in pure petition activities – the defendant could only be punished for "sham petitions", and Judge Nielson found that the defendant's [Crown Asset Management] lawsuits were not sham petitions. 2021 WL 3473050, at *7. Now, Defendant would like the present case reassigned to Judge Nielson so that he can issue a ruling consistent with *Holmes*.

Defendant asserts that the court has the ability to transfer this case to Judge Nielson through the court's inherent power to transfer the case and through 28 U.S.C. § 1404(a). This is not true. As circumstances currently stand, the court does not have the ability to transfer this case to Judge Nielson.

In the interest of justice, 28 U.S.C. § 1404(a) permits the court to transfer a case to another district or division if that would be more convenient for the parties and witnesses – as long as the action could have been brought there originally, or if all the parties have consented. Judge Kimball presides over this action from the federal courthouse in Salt Lake City, and he is a judge for both the North and Central Divisions of the District of Utah. A transfer to the Central Division would not be more convenient for any party or witness since the location would remain the same. A transfer is thus not needed to satisfy the interests of justice. Even if such a transfer

were appropriate, it would not require a change in judges. Consequently, 28 U.S.C. § 1404(a) does not empower the court to transfer this case to Judge Nielson.

Regarding the court's inherent powers to transfer a case, the local rules of the District of Utah proscribe this court's powers to do so. *See United States v. Phillips*, 59 F. Supp. 2d 1178, 1183 (D. Utah 1999); *United States v. Young*, 2013 U.S. Dist. LEXIS 13481, at *11 (D. Utah Jan. 30, 2013). If a local rule does not expressly authorize the unilateral transfer of a case from another judge in the same district – but also does not proscribe that power – then the power would remain with the court. *See Hutchinson v. Pfeil*, 211 F.3d 515, 523 (10th Cir. 2000). However, when local rules do proscribe the power of a unilateral transfer, the local rules control any such transfer procedure. *See Young*, 2013 U.S. Dist. LEXIS 13481, at *11-12.

The District of Utah's local rule governing the assignment and transfer of cases is DUCiv. R. 83-2, which rule clearly does proscribe the power to transfer or reassign. There are two sections of DUCiv. R 83-2 that could apply here – the section concerning the assignment of cases and the section regarding consolidating cases.

The first relevant section provides that "all case assignments are assigned by an automated case assignment system" and that the "assignment of cases must be random". DUCiv 83-2(a). It contains two exceptions: (1) if the case is heard in a location other than Salt Lake City, the case be assigned to the resident judge; and (2) the Chief Judge may "assign or reassign any case upon a finding that the assignment or reassignment is necessary for the efficient administration of justice". *Id*. Neither of these exceptions is applicable here. This case is being heard in Salt Lake City and Defendant has not requested the Chief Judge to reassign the case.

The second relevant section, DUCiv 83-2(g), provides a procedure to transfer a case for purposes of consolidation, but this provision is inapplicable because it requires "two or more

5

related cases [to be] pending before different judges of this court". The *Holmes* case before Judge Nielson was dismissed, judgment was entered, and the time for appeal has passed. It is no longer pending. As Defendant has identified no pending related case before Judge Nielson, the case is ineligible for transfer to him.

Based on the foregoing reasoning, the court concludes that it has no power to transfer this case to Judge Nielson. Accordingly, the court denies Defendant's motion to reassign this action to Judge Nielson.

## DEFENDANT'S MOTION TO DISMISS

Plaintiffs' Complaint consists of claims that Defendant violated the FDCPA and the UCSPA. Defendant requests, pursuant to Rules Fed R. Civ. P. 12(b)(1) and (6), that the court dismiss Plaintiffs' claims with prejudice.

## LEGAL BACKGROUND

### I. Fair Debt Collection Practice Act

Plaintiffs' first claim for relief falls under the FDCPA. Specifically, Plaintiffs allege that Defendant engaged in unfair and deceptive acts and practices in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f. Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." The following conduct violates the relevant subsections of § 1692e:

> "(2) The false representation of – [t]he character, amount, or legal status of any debt;"
> "(5) The threat to take any action that cannot legally be taken or that is not intended to be taken;"
> "(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

## II. Utah Consumer Sales Practice Act

Plaintiffs' second claim for relief falls under the UCSPA. The UCSPA aims to "protect consumers from suppliers who commit deceptive and unconscionable sales practices" and "to encourage the development of fair consumer sales practices." UTAH CODE § 13-11-2(2)-(3). Although not expressly stated in the language of the UCSPA, "the UCSPA applies to collection agencies and debt collection actions." *Buhler v. BCG Equities, LLC*, 2020 WL 888733, at *4 (D. Utah 2020) (citing *Sexton v. Poulsen & Skousen P.C.*, 372 F. Supp. 3d 1307, 1320 (D. Utah 2019)).

## III. Utah Collection Agency Act

The UCAA outlines a licensing regime for entities engaging in debt collection in Utah. Utah Code § 12-1-1 mandates that "[n]o person shall conduct a collection agency, collection bureau, or collection office in [Utah] . . . unless at the time of conducting the collection agency, collection bureau, [or] collection office . . . that person . . . is registered with the Division of Corporations and Commercial Code and has on file a good and sufficient bond as hereinafter specified." Utah Code § 12-1-6 makes it "a class A misdemeanor" to "fail[] to comply with any provision of [the UCAA]." The UCAA covers any organization in the "business of buying debt originated by someone else and then collecting on that debt." *Lawrence v. First Fin. Inv. Fund V, LLC*, 444 F. Supp. 3d 1313, 1328 (D. Utah 2020); *see also Cotte v. CVI SGP Acquisition Trust*, 2022 WL 464307, at *2 (D. Utah 2022).

## LEGAL STANDARDS

Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) "allows a court to dismiss a complaint for lack of subject matter jurisdiction." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (citation

omitted). "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Id*. at 1151 (quoting *Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013)). "[F]ederal subject matter jurisdiction is elemental," and "must be established in every cause under review in federal courts." *Id*. (quoting *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1022 (10th Cir. 2012)). The "burden of establishing" a federal court's subject matter jurisdiction "rests upon the party asserting jurisdiction." *Id*. (citation omitted). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id*. (quoting *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)).

Fed. R. Civ. P. 12(b)(6)

On a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations in a complaint and views them in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "need not take as true the complaint's legal conclusions." *Dronsejko v. Thornton*, 632 F.3d 658, 666 (10th Cir. 2011). To withstand a 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to rise above the speculative level and state a plausible claim for relief. *Iqbal*, 556 U.S. at 666.

**ANALYSIS**

**I.     *Rooker-Feldman* Doctrine**

Defendant's first argument is that this court lacks subject matter jurisdiction over this action due to the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine provides that federal courts, other than the United States Supreme Court, lack jurisdiction to adjudicate claims seeking review of state court judgments." *Bisbee v. McCarty*, 3 F. App'x 819, 822 (10th Cir. 2001) (citation omitted). Meaning, "[f]ederal district courts do not have jurisdiction to review state

court judgments or claims inextricably intertwined with them." *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006). The Tenth Circuit has held that "[i]f adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment." *Bisbee*, 3 F. App'x at 822 (citation omitted).

One of Plaintiffs' relief requests is to have the state judgments voided. Plaintiffs have conceded that the *Rooker-Feldman* doctrine bars this request. The court agrees and accordingly dismisses – for lack of subject matter jurisdiction – all aspects of Plaintiffs' Complaint that seek declaratory or injunctive relief that would relitigate the underlying state court decisions. The court does, however, retain subject matter jurisdiction over the rest of this case.

In *Carvana v. MFG Fin., Inc.*, the court held that the *Rooker-Feldman* doctrine was inoperable because the FDCPA claim "did not arise from the state court judgment, but instead arose from the practices [d]efendants employed in collecting the underlying debt." 547 F. Supp. 2d 1219, 1224 (D. Utah 2008). Thus, the FDCPA claim did not require the court to "overturn prior state court judgments." *Id*. The *Carvana* court went on to justify its holding by stating that it is consistent with other decisions wherein courts have determined that the "*Rooker-Feldman* doctrine does not apply to cases in which creditors (or debt collectors) obtain a judgment in state court but have their collection practices challenged in federal court under the FDCPA." 547 F. Supp. 2d 1219, 1225 (D. Utah 2008).

Like *Carvana*, the court finds in the present case that the *Rooker-Feldman* doctrine is inoperable (excluding the previously addressed issue) because it would be possible to resolve the FDCPA and UCSPA claims in Plaintiffs' favor "without determining that the state court judgment[s] [were] erroneously entered or void." *See Bisbee*, 3 F. App'x at 823. FDCPA and

9

UCSPA claims are not predicated on whether a valid underlying debt exists. An underlying debt can remain valid even if a court finds a violation of the FDCPA or UCSPA has occurred. "In other words, a court could find that the debtor breached a commitment to pay, while also finding that the debt collector acted unlawfully in collecting on the debt." *Cotte*, 2022 WL 464307, at *6. Further, since the damages provisions of the FDCPA and the UCSPA function without regard to the validity of the underlying debt, any imposition of statutory damages here "does not require that the court nullify – or even consider the validity of – the underlying state judgment[s]." *Id*.

Simply put, if Plaintiffs were to eventually succeed on their FDCPA and UCSPA claims, the underlying state court judgments would be undisturbed and Defendant would be permitted to collect that valid debt through lawful means. Hence, the court concludes that the *Rooker-Feldman* doctrine does not bar Plaintiffs' FDCPA or UCSPA claims to the extent that they seek statutory or actual damages.

## II. Res Judicata

Defendant argues that Plaintiffs' claims are barred by res judicata – both issue preclusion and claim preclusion. As the party asserting preclusion, Defendant has the burden of proving that Plaintiffs' claims are barred by res judicata. *See Nwosun v. Gen. Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997). The court finds that Defendant has failed to meet this burden.

Issue preclusion prevents the re-litigation of facts or issues that were fully resolved in a prior related action. *Moss v. Parr Waddoups Brown Gee & Loveless*, 285 P.3d 1157, 1164 (Utah 2012). The party invoking issue preclusion must establish four elements:

> (i) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication was identical to the one presented in the instant action; (iii) the issue in the first action was completely, fully, and fairly litigated; and (iv) the first suit resulted in a final judgment on the merits.

*Id*.

10

Defendant has failed to establish that elements (ii) and (iii) are present here.

The underlying debt collection actions centered on breaches of contract between Plaintiffs and a third party. The issues decided were that of breach of contract and the existence of an assignment. Neither Plaintiffs nor Defendant raised whether Defendant's method of collecting the debts complies with the UCAA, the UCSPA, or the FDCPA – which are the issues material to the present action. Thus, the validity of the underlying debt was raised in the state actions, but the separate issues regarding the legality of Defendant's debt collection practices were not. Furthermore, issue preclusion cannot apply when a judgment is obtained through default because no issues are actually litigated. Defendant obtained the underlying judgments through default, so issue preclusion does not apply.

In contrast to issue preclusion, claim preclusion bars a subsequent action if the party invoking preclusion demonstrates the following three elements:

> First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*Gillmor v. Family Link, LLC*, 284 P.3d 622, 626 (Utah 2012). While the parties do not dispute that the first and third elements are met here, the parties do dispute whether the second element has been established.

To aid in evaluating the second element of claim preclusion, the Utah Supreme Court has adopted the transactional approach set out in § 24 of the Restatement (Second) of Judgments. *Gillmore v. Fam. Link, LLC*, 284 P.3d 622, 627 (Utah 2012). "Under the transactional test, the claims are the same if they arise from the same operative facts, or in other words from the same transaction." *Id*. While "[n]o single factor is determinative," the court should bear in mind "such considerations as whether the facts are related in time, space, origin, or motivation, whether they

11

form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id*. (citation omitted).

Here, the state action and federal action claims arise from different transactions. The underlying state actions each arise from a transaction between Plaintiffs and a third party. In both cases, Plaintiffs failed to make payments on credit owed. These breaches of contract are the bases of the state lawsuits. In contrast, the present federal lawsuit arises from later actions that Defendant took – Defendant's debt collection practices. The transactions that formed the bases of the state lawsuits are entirely separate from Defendant's later actions to collect the debt. *See Carvana*, 547 F. Supp. 2d at 1226; *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1997); *Peterson v. United Accts., Inc.*, 638 F.2d 1134, 1137 (8th Cir. 1981); *Nikkel v. Wakefield & Assocs., Inc.*, 2011 WL 4479109, at *5 (D. Colo. 2011).

In *McMurray v. Forsythe Fin., LLC*, that court came to the opposite conclusion, holding that the state court action and the subsequent debt collection efforts arose from the same transaction. 2021 WL 83265, at *3 (D. Utah 2021). However, like the *Cotte* decision, this court disagrees with that reasoning. *See* 2022 WL 464307 at *5. Plaintiffs' failures to pay debt led to the state lawsuits, while Defendant's debt collection tactics are what led to the federal lawsuit. These are separate transactions. As such, Plaintiffs were not required to raise their present claims in the state actions.[1] Consequently, Defendant has failed to establish the second element of claim preclusion.

Based on the foregoing reasoning, the court concludes that res judicata does not bar Plaintiffs' claims in the present action.

---

[1] As previously established in the *Rooker-Feldman* doctrine section, the end result of this case – whatever it may be – will not disturb the state court judgments. This further supports the court's conclusion that Plaintiffs were not required to raise their present claims in the underlying state actions.

### III. Judicial Proceedings Privilege

Defendant contends that Plaintiffs' claims are barred by the judicial proceeding privilege because Plaintiffs' claims are based on purported misrepresentations that Defendant made in the underlying state actions.

Judicial proceeding privilege is a judicially created doctrine to protect statements and conduct made in the course of judicial proceedings. *Peterson v. XPO Logistics, Inc.*, 812 F. App'x 754, 757 (10th Cir. 2020). This common law defense does not bar claims brought under the FDCPA or the UCSPA. *Brown v. Constantino*, 2009 WL 3617692, at *5 (D. Utah Oct. 27, 2009). The United States Supreme Court case *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995), even specifically holds that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, *even when that activity consists of litigation*." (emphasis added). Accordingly, the court concludes that the judicial proceeding privilege does not apply to Plaintiffs' FDCPA and UCSPA claims.

### IV. FDCPA Claim

Defendant has raised several arguments as to why Plaintiffs have failed to state a FDCPA claim. The court will now address each argument in turn.

#### a. UCAA Violation

Defendant first argues that there cannot be a UCAA violation here to support Plaintiffs' FDCPA claim because Defendant was not required to register under the UCAA and did not violate the UCAA when it engaged a Utah attorney to file lawsuits to collect on debts that Defendant owns. The court disagrees with Defendant's interpretation of the UCAA here.

The UCAA mandates that a person properly register with the Division of Corporations and Commercial code before engaging in conducting a collection agency, bureau, or office.

13

UTAH CODE § 12-1-1. The "business of buying debt originated by someone else and then collecting on that debt" falls within the UCAA's ambit. *Lawrence*, 444 F. Supp. 3d at 1328. Thus, suing to collect on a debt while unregistered "is an action that cannot be legally taken in Utah". *Cotte*, 2022 WL 464307 at *7; *see also Buhler*, 2020 WL 888733 at *2. The court therefore finds that Plaintiffs have pleaded sufficient facts at this stage of litigation to plausibly support their allegation that Defendant violated the UCAA. Consequently, Defendant's argument is unsuccessful here and the FDCPA claim will not be dismissed as a result of it.

### b. Utah Open Courts

Defendant next argues that Plaintiffs have failed to state their FDCPA claim because the UCAA does not expressly forbid an unregistered person from bringing a *lawsuit* to collect a debt, and thus the court cannot create a limitation of the state constitutional right to access Utah's courts. *See Salt Lake City v. Weiner*, 219 P.3d 72, 74 (Utah C't App. 2009) (stating that a limitation on the right to access Utah's courts "cannot be inferred from statutory silence but must be found in express language"). However, the court finds that the plain language of the UCAA does bar an unregistered person from bringing a lawsuit to collect a debt.

Section 12-1-1 of the UCAA bars any conduction of a "collection agency, collection bureau, collection office, or collection business". Lawsuits are the most potent, common, and obvious tools available to a debt collector. Had the legislature intended to carve out a loophole, it easily could have done so since the UCAA exempts some actors and even specifically bans pro se debt collection lawsuits. Since there is no loophole for lawsuits written in the UCAA, the court concludes that the broad, but plain language of the UCAA does bar debt collection lawsuits from unregistered persons.

The question remains whether the UCAA therefore violates the open courts provision of the Utah Constitution, Utah Const. art I, § 11. The court finds that it does not. A statute is compliant with Utah Const. art I, § 11 "if the law provides an injured person an effective and reasonable alternative remedy by due course of law for vindication of his constitutional interest." *Velarde v. Board of Review of Indus. Comm'n*, 831 P.2d 123, 126 (UT Ct. App. 1992). Under the UCAA, a debt collector can obtain equal access to the courts simply by registering with the Division of Corporations and Commercial code and obtaining a bond. Once these prerequisites are satisfied, debt collectors have equal access to the courts. This alternative is thus effective and also abundantly reasonable, given that registration and bonding requirements are commonplace in Utah and in the greater debt collection industry. Therefore, the court concludes that the UCAA is compliant with the open courts clause of Utah's Constitution.

In short, the court holds that the UCAA does and may – under Utah's constitution – bar an unregistered debt collector from bringing a lawsuit to collect a debt. Consequently, Plaintiffs' FDCPA claim survives Defendant's argument here for dismissal.

### c. Private Right of Action

Defendant contends that Plaintiffs are legally prohibited from transforming a purported violation of the UCAA into a private right of action under the FDCPA. However, that is not what Plaintiffs are attempting to do. Plaintiffs have alleged UCAA violations to establish a required element of an FDCPA claim. The court finds that this is permissible here.

As explained in *Buhler*, "a violation of the UCAA's registration provision may provide a basis for finding an FDCPA violation when accompanied by the filing of a lawsuit to collect debt." 2020 WL 888733, at *4; *see also Cotte*, 2022 WL 464307, at *7-8; *Gunther v. Midland Credit Management, Inc.*, 2018 WL 4621764, at *5, *9 (D. Utah 2018); *Garner v. Asset*

*Management Associates, Inc.*, 2011 WL 6398112, at *1 (D. Utah 2011); *Muscato v. Northland Group, Inc.*, 2015 WL 12600165, at *6 (D. Utah 2015). That scenario is precisely what Plaintiffs have alleged in the present action. Thus, Plaintiffs' FDCPA claim is plausible and the court finds that it is sufficiently pleaded. As a result, Defendant's dismissal argument here fails as well.

### d. First Amendment Petition Clause

Defendant's most greatly emphasized argument against Plaintiffs' FDCPA claim is a constitutional one. Defendant relies heavily on the *Holmes* decision to contend that the Petition Clause of the First Amendment to the U.S. Constitution bars Plaintiffs' claims. The court disagrees, based on the following reasoning.

"[The United States Supreme] Court's precedents confirm that the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes. The right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (internal marks omitted). When the Petition Clause is raised in a non-antitrust matter, the Tenth Circuit refers to it as "Petition Clause immunity". *CSMN Invs., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1283 (10th Cir. 2020). The United States Supreme Court has made it clear that this immunity does not apply to "sham petitioning". *Id*. In Petition Clause immunity cases, the Tenth Circuit has adopted the *Noerr-Pennington* two-step test when an evaluation of whether sham petitioning has occurred is needed. *Id*. This test requires a court to first determine if the petitioning activity were objectively reasonable – and if it were not, to then examine the subjective intent behind the petitioning. *Id*. at 1283-84.

To evaluate the present action in the context of the Petition Clause, the court first finds that there is an important procedure versus substance distinction at play here. The Petition Clause

protects the procedure of filing a lawsuit. However, state and federal law may hold persons accountable for the substance of their lawsuits. It is possible to file a lawsuit and to also face consequences for doing so if it were done for an improper purpose. A great example of this is Utah Rule of Civil Procedure 11. This rule instructs attorneys and unrepresented parties to not submit pleadings or motions "for any improper purpose, such as to harass, cause unnecessary, or needlessly increase the cost of litigation", and provides for sanctions if this rule is violated. Utah R. Civ. Proc. 11(b)(1), (c). When a party has violated Rule 11, they have done so due to the substance of their suit – not because of the act of filing. Indeed, the existence and operation of Rule 11 serves as striking proof that there is an important distinction between procedure and substance. Applying this distinction to the current case, the court finds that it is procedurally possible to file a debt collection lawsuit – as exemplified by the underlying lawsuits. However, if in doing so the filing party violates Utah or federal law, then that party may face the consequences of the illegal nature of the lawsuit.

In the current matter, Defendant was procedurally able to file the underlying lawsuits. The substance of those lawsuits was debt collection. As discussed previously, Plaintiffs allege that using those lawsuits to collect the underlying debts is unlawful. Thus, the First Amendment poses no barrier for Plaintiffs' FDCPA claim because Defendant was able to file the underlying lawsuits; but, the issues of alleged illegality here pertain to the substance of the lawsuits, and the First Amendment does not operate to make unlawful actions lawful.

Plaintiffs have alleged that Defendant's debt collection activities were criminal under Utah Code Ann. § 12-1-1 *et seq*. The scope of the Petition Clause is defined by the protections afforded by the First Amendment. *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 891 (10th Cir. 2000); *Osborn v. Pennsylvania-Delaware Serv. Station Dealer*, 499

17

F. Supp. 533, 556 (D. Del. 1980). Consequently, the First Amendment – like with criminal speech – does not protect criminal petitions. *See Cardtoons*, 208 F.3d at 891. Given that Plaintiffs have alleged that Defendant performed illegal activity, and criminal activity is not protected by the First Amendment, the court holds that the Petition Clause does not apply. The court therefore concludes that there is no constitutional reason to dismiss Plaintiffs' FDCPA claim.[2]

## V. UCSPA Claim

Defendant also argues for the dismissal of Plaintiffs' UCSPA claim. The court has already addressed in this Order several issues pertinent to Defendant's request to dismiss Plaintiffs' UCSPA claim. However, a key element that the court must also determine here is whether a UCAA violation can establish a UCSPA claim. This exact issue is currently being considered by the Tenth Circuit in the *McMurray v. Forsythe Fin., LLC* appeal. 2021 WL 83265 (D. Utah 2021). Until the Tenth Circuit issues its *Forsythe* decision and provides clarification on that issue, this court declines to make a decision on whether a UCAA violation can establish a UCSPA claim. The court therefore cannot at this time complete its analysis of whether Plaintiffs successfully stated a UCSPA claim. Accordingly, the court denies Defendant's motion to dismiss Plaintiffs' UCSPA claim without prejudice.

## CONCLUSION

Based on the above reasoning, the court DENIES Defendant's motion to reassign. The court GRANTS IN PART AND DENIES IN PART Defendant's motion to dismiss. The court GRANTS the motion as to all aspects of Plaintiffs' Complaint that seek declaratory or injunctive

---

[2] Importantly, the U.S. Supreme Court found in *Heintz* that the FDCPA extends to litigation practices. 514 U.S. 291, 298-99. While the Petition Clause was not addressed in that case, the *Heintz* decision nevertheless lends great weight to this court's decision regarding the Petition Clause.

relief that would relitigate the underlying state court decisions. The court DENIES the motion as to Plaintiffs' FDCPA claim. The court DENIES without prejudice the motion as to Plaintiffs' UCSPA claim, given that the court declines to address an outstanding issue regarding the UCSPA claim at this time.

DATED this 15th day of June, 2022.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge